# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40963

STEPHEN J. HELPERT,

      Plaintiff - Appellant

v.

STEVEN P. WALSH,

      Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

November 27, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CV-240

Before REAVLEY, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

This case arises out of a motor-vehicle collision between Stephen Helpert and Steven Walsh. Although Walsh admitted the accident was his fault, a jury found he was not negligent. Helpert now appeals the district court's denial of his motion for directed verdict and the subsequent denial of his motion for new trial. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40963

I

The accident occurred in Corpus Christi on July 17, 2014. Walsh, a pilot in the U.S. Coast Guard, was in town to inspect an airplane-housing facility and to obtain flight hours. After leaving work, Walsh became lost and pulled into a parking lot to call a friend for directions. Upon completing the call and reorienting himself, Walsh placed his mobile phone in the center console of his rental vehicle and began moving towards the parking lot's exit. To reach his destination, Walsh needed to turn left out of the parking lot and head south, a maneuver that required him to cross two lanes of northbound traffic. After looking to his left and determining the coast was clear, Walsh began to execute his turn. He did not see Helpert, who was traveling north in the second, innermost lane. Just as Walsh crossed the first lane of oncoming traffic, he struck Helpert's passenger side and, because Helpert's vehicle was still moving, became jammed in the rear wheel of Helpert's vehicle, damaging the tire and surrounding area.

Walsh apologized for the accident and offered to replace Helpert's tire. The pair traveled to several tire stores and Walsh bought a new tire and helped install it on Helpert's vehicle. After completing the installation, Helpert commented the vehicle looked "okay" and drove away. That evening, at the behest of his wife, Helpert went to an emergency room and complained of pain to his knee, back, and neck.

Helpert sued Walsh in Texas state court for several million dollars. Walsh removed to federal court based on diversity jurisdiction. Settlement attempts failed and the case went to a jury. During trial, Walsh admitted that he caused the accident, failed to keep a proper lookout, and failed to yield the right of way. On balance, however, Walsh also testified that he stopped, looked, and proceeded to cross the road only after he believed the coast was clear; he further explained that Helpert might have been in his blind spot, thus escaping

2

his view. Much of Helpert's testimony concerned the extent of the injuries he suffered as a result of the car accident. Walsh attempted to cast doubt on Helpert's credibility by introducing evidence of Helpert's prior theft convictions, in addition to a post-accident video that showed Helpert using physical force that appeared to rebut the extent of his claimed injuries.

At the close of evidence, Helpert moved for a directed verdict on the question of Walsh's negligence, stating that "the evidence is undisputed as a matter of law, and [Walsh has] admitted that he failed to keep a proper lookout, [] failed to yield to the right of way, and he acknowledged that this wreck was caused by his negligence and failing to do so." Walsh countered that his negligence, if any, was "a fact issue for the jury to determine." The court overruled Helpert's request for a directed verdict. On May 17, 2017, and after deliberating for two hours, a unanimous jury returned a no-negligence verdict for Walsh.

On June 27, 2017, Helpert filed a "motion for judgement [*sic*] notwithstanding the verdict, or in the alternative, motion for new trial." The district court entered its final judgment two days later, on June 29, 2017, without ruling on Helpert's motions. On July 20, 2017, Helpert filed a second motion for new trial. Believing that Helpert's first motion had been overruled, Walsh filed a motion for clarification to determine whether the district court's June 29 final judgment "was intended to dispose of [Helpert's] motion for judgment notwithstanding the verdict, motions for new trial, and motion to seal, and is a final, appealable judgment[.]" The district court denied Walsh's motion, clarified that its final judgment "was not intended to preclude [Helpert's] post-judgment motion for a new trial," and then overruled Helpert's second motion for new trial. Helpert filed a notice of appeal on September 15, 2017.

No. 17-40963

## II

We first address Walsh's argument that we lack jurisdiction because Helpert's notice of appeal was untimely. As mentioned, Helpert filed a motion for new trial two days before the district court entered final judgment. Walsh contends the final judgment implicitly and necessarily overruled Helpert's prejudgment motion, thus running the 30-day clock for purposes of filing a notice of appeal. Helpert disagrees; he argues the 30-day period started on August 18, when the district court explicitly denied his second motion for new trial and clarified that its final judgment was not intended to dispose of Helpert's prejudgment motion.

Although a notice of appeal must generally be filed within 30 days after the entry of the judgment or order that is being appealed, *see* FED. R. APP. P. 4(a)(1)(A), some motions toll the notice-of-appeal clock. If, for example, a party files a motion for a new trial under Rule 59, as Helpert did here, the time to file an appeal runs "from the entry of the order disposing of the last such remaining motion." FED. R. APP. P. 4(a)(4)(A). The question for us is whether the district court's June 29 final judgment "disposed" of Helpert's prejudgment motion for new trial, thus starting the 30-day appeals clock and causing his September 15 filing to be untimely.

Walsh relies on the Seventh Circuit's decision in *Dunn v. Truck World, Inc.*, which holds that "[w]hen a party files a pre-judgment motion for a new trial, the judgment itself is the order 'denying a new trial'" and that "[f]inal judgment necessarily denies pending motions, and so starts the time for appeal." 929 F.2d 311, 313 (7th Cir. 1991). Although we have acknowledged the "ample precedent in this Circuit for the proposition that a district court's final judgment may impliedly deny an outstanding motion," we have never held that a final judgment necessarily decides all pending motions. *See Perez v. Lucas*, 176 F.3d 480, at *2 (5th Cir. 1999) (per curiam) ("The entry of final

4

judgment does not per se decide all motions pending before the trial court.");
*see also Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 & n.2
(5th Cir. Unit A 1981), *cert. denied,* 454 U.S. 1098 (1981). Instead, we employ
a case-by-case approach to determine the effect of final judgments on pending
motions. *See Lapeyrouse v. Texaco, Inc.*, 670 F.2d 503, 505 (5th Cir. 1982).

The district court's final judgment did not operate to overrule Helpert's
prejudgment motion for new trial so as to start the time to file an appeal
because the court clarified its intent and subsequently made a decision on the
merits. Under circumstances such as these, "the entry of judgment obviously
was not intended to dispose of the motion for new trial." *See Greater Hous.
Chapter of the Am. Civil Liberties Union v. Eckels*, 755 F.2d 426, 428 (5th Cir.
1985) (no implied denial when "the district court ordered the parties to brief
the matter on the same day that the judgment was entered, and the court
subsequently considered and made a decision on the motion"); *see also United
States v. Pan Am. World Airways, Inc.*, 299 F.2d 74, 76 (5th Cir. 1962), *rev'd on
other grounds sub. nom.* 382 U.S. 25 (1965). Of course, a final judgment may
operate to impliedly deny a prejudgment motion, as noted by this circuit and
other sources.[1] But that is not the case here, so we turn to the merits.

III

"The court reviews *de novo* a motion for directed verdict, applying the
same standard as the district court." *X Techs., Inc. v. Marvin Test Sys., Inc.*,
719 F.3d 406, 411 (5th Cir. 2013). "If the facts and inferences point so strongly

---

[1] *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017), *cert. denied*; *United States v. Jasso*, 634 F.3d 305, 307 n.2 (5th Cir. 2011); *Whiting v. Kelly*, 255 Fed. App'x 896, 900 (5th Cir. 2007) (per curiam); *Tollett v. City of Kemah*, 285 F.3d 357, 369 n* (5th Cir. 2002); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 974 (5th Cir. 1993); 16A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3950.4 (4th ed.) ("However, if the possibility exists that the court's judgment could be taken to deny a tolling motion that was made prior to the judgment's entry, the prudent course is to assume the prejudgment motion might not have the effect of tolling the time to appeal from the judgment").

No. 17-40963

and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." *Id.* (citation omitted). "But 'if reasonable persons could differ in their interpretations of the evidence,' a determination of the issue is for the jury." *Id.* (quoting *Bryant v. Compass Grp. USA Inc.,* 413 F.3d 471, 475 (5th Cir. 2005)). In conducting this analysis, we view the facts and draw inferences in the light most favorable to the nonmovant. *Id.* "Although our review is de novo, 'after a jury trial, the standard of review is especially deferential.'" *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018) (cleaned up and citations omitted).

Helpert argues the district court erred in denying his motion for directed verdict because the evidence established that Walsh was negligent as a matter of law in failing to keep a proper lookout and in failing to yield the right of way. This is so, according to Helpert, because Walsh: (1) admitted he caused the accident; (2) admitted that he did not see Helpert's vehicle; (3) apologized for causing the accident; (4) testified that he failed to keep a proper look out and failed to yield the right of way; and (5) stated that Helpert was not responsible for the accident. Helpert additionally argues that Walsh's statement in the parties' joint pre-trial order that "the July, 2014 accident was his fault" constitutes a judicial admission and is similarly conclusive.

Addressing Helpert's arguments, we conclude the district court did not err in denying Helpert's motion for directed verdict because reasonable persons could differ in their interpretations of the evidence. *X Techs.,* 719 F.3d at 411. Under Texas law, "[a]ll persons have the duty to maintain a proper lookout and to observe in a careful manner the traffic and general situation at and in the vicinity of an intersection." *Gomez v. Adame*, 940 S.W.2d 249, 251 (Tex. App.—San Antonio 1997, no writ); *Lynch v. Ricketts*, 314 S.W.2d 273, 275 (Tex. 1958). However, the mere occurrence of an accident does not equate to negligence.

6

*Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *Mata v. Coastal Agric. Supply, Inc.*, No. 01-17-00509-CV, 2018 WL 3150869, at *6 (Tex. App.—Houston [1st Dist.] June 28, 2018, no pet.) (mem. op.) ("A driver's failure to yield the right-of-way does not give rise to negligence as a matter of law."). Instead, a party must prove "specific acts" of negligence, which "is generally a question of fact for the jury to determine." *Gomez*, 940 S.W.2d at 252; *Dedear v. James*, 184 S.W.2d 319, 321 (Tex. Civ. App.—Austin 1944, writ ref'd w.o.m.). Indeed, "when evidence shows that the driver exercised some care, 'it becomes an issue of fact as to whether the driver's conduct was negligent.'" *Mata*, 2018 WL 3150869, at *6 (quoting *County of Dallas v. Poston*, 104 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.)); *Waring v. Wommack*, 945 S.W.2d 889, 894 (Tex. App.—Austin 1997, no writ).

Walsh testified that he stopped, looked, and proceeded only after he thought the coast was clear; he further explained that Helpert might have been in his blind spot, thus escaping his view. In addition, Walsh testified that he was not eating, drinking, or on his phone at the time of the accident. Thus, the jury could have reasonably determined that Walsh was not negligent in causing the accident. Helpert's arguments to the contrary "labor[] under the misperception that the mere occurrence of a collision establishes negligence as a matter of law." *Gomez*, 940 S.W.2d at 252; *see Dedear*, 184 S.W.2d at 321 ("The foregoing facts sustain the jury finding that while the truck driver failed to keep a proper lookout and failed to yield the right of way to the approaching automobile, that neither of such acts was negligence.").

Nor do Walsh's fault-based statements prove negligence; instead, they are merely evidentiary admissions that "may be controverted or explained" by the party who made them. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477 (5th Cir. 2001); *Risinger v. Shuemaker*, 160 S.W.3d 84, 90–91 (Tex.

App.—Tyler 2004, pet. denied) (defendant's admission of fault was not conclusive on the issue of negligence but merely a quasi-admission for the jury to weigh); *see also Bentley v. Snodgrass*, No. 10-17-00319-CV, 2018 WL 4623940, at \*3 (Tex. App.—Waco Sept. 26, 2018, no pet. h.) (mem. op.) (holding that a jury could find the driver was not negligent even though he admitted "that he failed to yield the right of way and that he was financially responsible for the damages caused by the collision").

We also reject Helpert's argument that Walsh's statement in the parties' joint pre-trial order serves as a judicial admission such that it is conclusive on the issue of negligence. In that same order, Walsh expressly reserved as a contested issue of fact whether he was negligent in causing the accident. Read in context, Walsh admitted that he *caused* the accident, not that he was *negligent*. As discussed, one may cause an accident without being negligent.

And there is no error in the district court's denial of Helpert's new-trial motion, which we review for abuse of discretion. *Seibert v. Jackson Cty., Mississippi*, 851 F.3d 430, 438 (5th Cir. 2017). "Under our precedent, '[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.'" *Id.* at 439 (quoting *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998)). "In other words, the movant must show 'an absolute absence of evidence to support the jury's verdict.'" *Id.* (citation omitted).

Helpert regurgitates many of his above-mentioned arguments and we reject them for the above-discussed reasons. *Wackman v. Rubsamen*, 602 F.3d 391, 399 (5th Cir. 2010) ("[O]ur review of a denial of a motion for new trial . . . is subsumed in our analysis of the denial of a motion for judgment as a matter of law.") (internal citation and quotation marks omitted). Helpert's additional argument is similarly unavailing.  He contends that, because the evidence "supports only one conclusion" (that Walsh was negligent), the only "plausible

explanation" for the jury's no-negligence finding is prejudice. Helpert's argument is bottomed on the district court's admission of his prior theft convictions and defense counsel's references to Walsh's military rank; that is, Helpert claims he was "clearly prejudiced by his criminal past which was poorly contrasted by the Defendant's upstanding character."

First, Helpert is wrong that the evidence "supports only one conclusion." As explained, although Walsh admitted that he caused the accident and failed to keep a proper lookout, that does not prove negligence as a matter of law. While the evidence could support a negligence finding, it also could support a no-negligence finding. Thus, there is not "an absolute absence of evidence to support the jury's verdict." *Williams*, 898 F.3d at 614. And although Helpert never objected to counsel's mentioning of Walsh's military rank, whether he was prejudiced as a result rests on mere speculation; other courts have rejected similar arguments and we do so here.[2] Nor do we find error regarding the admission of Helpert's prior criminal convictions. Under Rule 609(a)(1)(A), evidence of such a conviction "must be admitted, subject to Rule 403" for the purpose of impeaching a witness. When the resolution of a case turns largely on the credibility of a witness, we have held that the probative value of a recent criminal conviction is "not sufficiently outweighed by the potential for prejudice to justify exclusion." *Mayes v. Kollman*, 560 Fed. App'x 389, 394 (5th

---

[2] *Galmore v. Hanks*, 85 F.3d 631 at *3 (7th Cir. 1996) ("For all we know, the jurors may have been unimpressed or even negatively affected by the military uniform."); *United States v. Rosenberger*, 502 Fed. App'x 389, 395 (5th Cir. 2012) (per curiam) ("The prosecutor's reference to a witness's military service was relevant in the context of the trial and cannot plausibly be interpreted as bolstering that witness's credibility."); *Lloyd v. Riley*, No. CV-88-2847, 1990 WL 59592, at *2 (E.D.N.Y. May 3, 1990), *aff'd,* 930 F.2d 911 (2d Cir. 1991) ("In this case, there was no evidence that the uniform of a third class petty sergeant unduly prejudiced the jury."); *Datsko v. City of Philadelphia*, No. CIV.A. 93-4746, 1995 WL 574364, at *1 (E.D. Pa. Sept. 26, 1995) ("Plaintiff, however, has come forward with no evidence that unfair prejudice would result from permitting the officers to dress as they please.").

Cir. 2014) (per curiam) (quoting *Eugene v. Mormac Marine Transp., Inc.*, 48 F.3d 529 (5th Cir. 1995) (unpublished)). Such is the case here: Helpert's credibility was central to this case; his account of the accident and the extent of his alleged injuries was critical to Walsh's liability and the millions Helpert sought in damages. We find no error with its admission and Helpert has not demonstrated sufficient prejudice so as to justify a new trial.

IV

AFFIRMED.